JESSIE JAMES LOWE v. CLAUDE FUTRELL, TRADING AS FUTRELL
FARM EQUIPMENT COMPANY, AND PERRY WILSON DRAPER.

(Filed 11 October, 1967.)

**1. Automobiles § 16—**

Although G.S. 20-149(b) does not apply to a motorist overtaking and
passing another vehicle within a business or residential district, such
motorist remains under the common law duty to exercise due care, which
may require him to sound his horn in overtaking and passing a bicycle
or other vehicle when the rider or driver thereof has not looked back and
has given no awareness of the overtaking vehicle.

**2. Automobiles § 54—**

Evidence failing to show that the *locus* was within a business or resi-
dential district and tending to show that defendant attempted to overtake
and pass a bicycle traveling in the same direction without giving warning
by horn or other device, and that the vehicles collided as the automobile
was in the process of passing the bicycle, *held* sufficient to take the issue
of negligence to the jury, assuming for the purpose of nonsuit that the
*locus* was not within a business or residential district.

**3. Negligence § 26—**

Nonsuit is properly granted on the ground of plaintiff's contributory
negligence where plaintiff's own evidence reasonably permits no other in-
ference.

**4. Automobiles § 39—**

A bicycle is a vehicle and its rider is a driver within the meaning of
the Motor Vehicle Law. G.S. 20-38(38).

**5. Automobiles § 85—**

Plaintiff's evidence tending to show that he, a 69 year old man, was
riding his bicycle, in the afternoon, on the righthand side of the paved
portion of a highway, and that as an automobile was overtaking and
passing him he suddenly turned to his left and started toward the center
of the highway in an attempt to cross it, without looking to his rear to
see if the movement could be made in safety, *held* to disclose contributory
negligence on his part as a matter of law.

APPEAL by plaintiff from *Fountain, J.,* at the January 1967 Ses-
sion of NORTHAMPTON.

The plaintiff sues for damages for personal injuries alleged to
have been sustained by him as the result of a collision, in the Town
of Rich Square, between the bicycle upon which he was riding and
an automobile owned by the defendant Futrell and driven by the
defendant Draper. He alleges that Draper was negligent in that he
drove the automobile at an excessive speed, failed to keep it under
proper control and failed to sound the horn or give other warning as

he approached, overtook and ran into the rear of the bicycle. The defendants deny any negligence on their part and allege, alternatively, that the plaintiff was guilty of contributory negligence in that he suddenly turned his bicycle to his left and into the path of the automobile without looking and without giving any warning of his intent to turn.

It is stipulated that the collision occurred within the Town of Rich Square, and it is admitted in the answer that Draper was driving the automobile in the course of his employment by Futrell, its owner, that the plaintiff was riding his bicycle eastwardly on his right side of Highway 305, that the automobile was also proceeding eastwardly on the same highway, that the two vehicles collided and the plaintiff sustained some injury as a result.

At the conclusion of the plaintiff's evidence, the defendants moved for judgment as of nonsuit. The motion was allowed and from such judgment the plaintiff appeals, his only assignment of error being the granting of such motion.

The material portions of the evidence introduced by the plaintiff, other than that relating to the extent of his injuries, are:

*Testimony of the Chief of Police:* At the point of collision, the paved portion of the highway is 20 feet wide and has shoulders about six feet wide. It is straight and level. The posted speed limit is 35 miles per hour. The shoulders are grass covered and level. At the time of the collision, the weather was clear and the highway dry. The plaintiff's home is on the north [his left] side of the highway. A driveway leads to it from the point of the collision. There are several homes in the vicinity on both sides of the highway, and in both directions from the point of the collision. The plaintiff told the officer that he did not see any car coming and he turned out into the road to go to his home and the car hit him.

*Testimony of the plaintiff:* "I am 69 years old and retired. On July 24, 1964, at about three o'clock in the afternoon, I was traveling on the right-hand side of the paved portion of the highway. * * * As I traveled east toward Ahoskie, I met a car coming from the opposite direction just as I approached my driveway. Just as I started to turn toward the center of the highway to enter my driveway on the left side of the highway, I was struck from the rear by defendant's automobile. * * * When Perry Draper came up behind me, he ran into me and threw my wheel (bicycle) down and knocked me down on the highway. I was about two feet from the right edge of the highway when I got hit. I did not tell Mr. Hinton Joyner [the Chief of Poilce] * * * that I turned my bicycle from the shoulder of the highway directly across the highway. I was on the right edge of the pavement and I did not look back before I

started to turn to my left, but Perry Draper hit me before I had got two feet to my left. * * * I was not thinking, and I did not look back to see if I could get across the highway with safety, but Perry Draper ran over me on my right side of the road when I was still on my right side of the highway. * * * Mr. Draper did not blow his horn before he hit me, do I would have heard it, and I would not have turned."

*Testimony of plaintiff's daughter:* "On July 24, 1964, at about three o'clock in the afternoon * * * I saw my father riding his bicycle on the right-hand side of the highway coming from the Rich Square direction toward his driveway. My father stopped for the car meeting him to pass and, as my father started to turn toward the driveway, Mr. Draper's car struck him. My father was about four or five feet from the right-hand dirt shoulder when he was struck. I did not see defendant Draper until he was right on my father, but I did hear tires sliding and squealing. Mr. Draper did not blow his horn before he hit my father. I ran to the highway and my father was lying motionless in the middle of the highway, bleeding at the mouth and about the face."

*Jones, Jones and Jones for plaintiff appellant.*
*V. D. Strickland for defendant appellees.*

LAKE, J. Taking the plaintiff's evidence to be true, resolving all conflicts therein in his favor, and considering it in the light most favorable to him, together with all inferences in his favor which may reasonably be drawn therefrom, it is sufficient to show that the defendant Draper, driving the automobile of his employer in the course of his employment, overtook the plaintiff's bicycle and attempted to pass it without blowing the horn or otherwise giving warning of his approach. However, it also leads inescapably to the conclusion that the adult bicyclist, familiar with the area and with the highway, after riding for an undisclosed distance eastwardly on the right-hand edge of the pavement, at three o'clock in the afternoon, turned his bicycle to his left and started toward the center of the road, with intent to cross it, without ever looking to his rear to see if the movement could be made in safety, the automobile driven by Draper being then practically upon him and in plain view.

Interpreting the plaintiff's evidence in the light most favorable to him, we assume that the point of collision was not a residence district, as that term is defined in the Motor Vehicle Law, and that, consequently, G.S. 20-149(b) applies. As amended in 1959, this statute provides:

"The driver of an overtaking motor vehicle not within a business or residence district, as herein defined, shall give audible warning with his horn or other warning device before passing or attempting to pass a vehicle proceeding in the same direction, but his failure to do so shall not constitute negligence or contributory negligence *per se* in any civil action; although the same may be considered with the other facts in the case in determining whether the driver of the overtaking vehicle was guilty of negligence or contributory negligence."

In *Cowan v. Transfer Co.* and *Carr v. Transfer Co.*, 262 N.C. 550, 138 S.E. 2d 228, this Court, speaking through Moore, J., said:

"The 1959 amendment of G.S. 20-149(b) does not mean that an overtaking and passing motorist is relieved of all duty to give audible warning; it simply means that a failure to give such warning may or may not constitute a want of due care, depending upon the circumstances of the particular case."

If, on the other hand, it be assumed that the point of collision was a residence district, as defined in the Motor Vehicle Law, the foregoing statute would impose upon the defendant Draper no duty to blow his horn, but it would not relieve him of a duty imposed upon him by the common law. The common law imposes upon him the duty to use reasonable care to avoid injury to other persons upon the highway and, for that purpose, to blow his horn if, under like circumstances and conditions, a reasonably prudent driver would have done so. The provision of this statute with reference to a vehicle within a business or residence district was not intended to forbid the overtaking motorist to sound his horn, or to absolve him of the duty to do so, where the circumstances are such that a reasonable man in the position of the overtaking motorist could foresee risk of injury to the person or property of the occupant of the forward vehicle if he undertakes to pass the forward vehicle without such warning. In the absence of a statutory requirement, "a motorist is required, when reasonably necessary, to blow his horn to give warning to travelers ahead." *Guthrie v. Gocking*, 217 N.C. 476, 8 S.E. 2d 607. See also, 8 Am. Jur. 2d, Automobiles, §§ 779, 780.

Evidence that a motorist overtook and, without blowing his horn, attempted to pass a bicyclist, who had not looked back and who had given no other indication of awareness of the overtaking vehicle, is evidence of negligence sufficient to carry that issue to the jury, whether the attempt to pass occurred in a residence district or in open country. See *Webb v. Felton*, 266 N.C. 707, 147 S.E. 2d 219. See also, 60 C.J.S., Motor Vehicles, § 288. Under the circumstances

disclosed by the plaintiff's evidence, interpreted in the light most favorable to him, there is in the present record sufficient evidence of negligence by the defendant Draper, imputed to his employer, Futrell, which was a proximate cause of the injury to the plaintiff, to withstand the motion for judgment of nonsuit so far as the issue of the defendants' negligence is concerned.

However, a nonsuit may properly be granted on the ground of the plaintiff's contributory negligence where his own evidence reasonably permits no other inference. *Short v. Chapman,* 261 N.C. 674, 136 S.E. 2d 40; *Cowan v. Transfer Co.* and *Carr v. Transfer Co., supra; Sheldon v. Childers,* 240 N.C. 449, 82 S.E. 2d 396; *Lyerly v. Griffin,* 237 N.C. 686, 75 S.E. 2d 730.

G.S. 20-154(a) provides, "The driver of any vehicle upon a highway before * * * turning from a direct line shall first see that such movement can be made in safety." In *Cowan v. Transfer Co.* and *Carr v. Transfer Co., supra,* this Court said:

"A violation of this provision is negligence *per se. Mitchell v. White,* 256 N.C. 437, 124 S.E. 2d 137; *Grimm v. Watson,* 233 N.C. 65, 62 S.E. 2d 538. We held in *Tallent v. Talbert,* 249 N.C. 149, 105 S.E. 2d 426, that failure to look during the last 90 feet before turning constituted contributory negligence as a matter of law. See also *Badders v. Lassiter,* 240 N.C. 413, 82 S.E. 2d 357; *Gasperson v. Rice,* 240 N.C. 660, 83 S.E. 2d 665."

By Chapter 768 of the Session Laws of 1965, subsection (b) of G.S. 20-154, which deals specifically with the signals to be given before turning or stopping, was amended by changing the period at the end thereof to a semi-colon and adding, "and provided further that the violation of this *section* shall not constitute negligence *per se.*" (Emphasis added). We need not now determine whether this proviso was intended to apply to subsection (a), for the collision here involved occurred 24 July 1964, prior to the amendment.

A bicycle is a vehicle and its rider is a driver within the meaning of the Motor Vehicle Law. G.S. 20-38(38). *Van Dyke v. Atlantic Greyhound Corp.,* 218 N.C. 283, 10 S.E. 2d 727.

The paintiff's evidence leads only to the inference that, without looking behind him to see that the move could be made in safety, the plaintiff, an adult, turned his bicycle to the left and into the path of the overtaking vehicle, thereby contributing to the collision and to his own injury. For this reason, the motion for judgment of nonsuit was properly allowed.

Affirmed.