ROBERT L. HURLEY, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF BARBARA POOLE HURLEY, DECEASED, PLAINTIFFS v. KEVIN WAYNE MILLER, AND HARVEY LEE SMITH, JR. AND WIFE, KELLY BOGER SMITH, D/B/A HLS TRUCKING, AND HLS TRUCKING, INC., DEFENDANTS

No. 9219SC1289

(Filed 1 March 1994)

1. **Automobiles and Other Vehicles § 738 (NCI4th)— violation of safety statute — instruction not required — no negligence per se**

    In an action for wrongful death arising out of an automobile accident, the trial court did not err by failing to instruct the jury that defendant violated N.C.G.S. § 20-150 by crossing the center line at a crest or curve and was negligent *per se* where the evidence tended to show that defendant crested a hill to discover decedent partially on the highway and partially on the shoulder checking her mail; defendant, who was driving a multi-ton truck, realized that he could not stop in time to avoid a collision; defendant therefore drove into the left lane to avoid decedent's vehicle; decedent then made an immediate left turn toward her driveway into the path of defendant's truck; and defendant struck decedent's vehicle. From the evidence presented at trial, a jury could reasonably conclude that defendant took reasonable action in light of the uncontroverted evidence of decedent's initial act of obstructing the road.

    **Am Jur 2d, Automobiles and Highway Traffic §§ 1112 et seq.**

2. **Automobiles and Other Vehicles § 716 (NCI4th)— car stopped on highway — overtaking truck — failure to blow horn — last clear chance — failure to instruct error**

    The trial court erred in failing to submit an instruction on the issue of last clear chance where a jury could reasonably find that in the time it took defendant to apply the truck's brakes and steer to the left, he had both the time and opportunity to avoid the collision with decedent's car which was partially in his lane of travel by blowing the truck's horn, thereby providing an adequate warning to decedent prior to her decision to move her vehicle from the mailbox on the right side of the road toward the left side of the road where her home was located.

## HURLEY v. MILLER

[113 N.C. App. 658 (1994)]

**Am Jur 2d, Automobiles and Highway Traffic § 1118.**

Judge COZORT concurring in part and dissenting in part.

Appeal by plaintiffs from judgment signed 25 June 1992 by Judge James C. Davis in Cabarrus County Superior Court. Heard in the Court of Appeals 28 October 1993.

On 11 March 1991, plaintiffs filed a complaint alleging *inter alia* negligence against defendants seeking recovery for damages arising from the death of Barbara P. Hurley (hereinafter "decedent"). A jury trial was held on 9 June 1992. In a "Pretrial Memorandum" dated 8 June 1992, the parties stipulated *inter alia* to the following facts which are pertinent to this appeal:

(a) That this action arises out of a motor vehicle collision which occurred on March 13, 1989 at approximately 2:30 p.m.

(b) That the collision occurred on R.P. 2444 which is a public street or highway located in Cabarrus County, North Carolina.

(c) That the vehicles involved in the collision, the owners of those vehicles and the operators of those vehicles were as follows:

(i) 1983 Toyota passenger vehicle bearing license plate number BSJ-7986, NC, and V.I.N. JT2AE72C5D2030426, was owned by plaintiff Robert Lee Hurley and operated by the decedent, Barbara Poole Hurley.

(ii) 1983 Ford 3-Ton truck bearing license plate number BK-1269, N.C., and V.I.N. 1FDYU80U6DVA38880, was owned by defendant Kelly Boger Smith and operated by the defendant Kevin Wayne Miller.

(d) That, at the time of the collision, the decedent, Barbara Poole Hurley was operating said vehicle as the agent of Plaintiff Robert Lee Hurley, in accordance with the "family purpose" doctrine.

(e) That, at the time of the collision, the defendant Kevin Wayne Miller was operating said vehicle as the agent of defendant Kelly Boger Smith, the owner of said vehicle, in accordance with G.S. 20-71.1 and as the agent of Harvey Lee Smith, Jr., in the normal course and scope of defendant Miller's employ-

ment with Harvey Lee Smith, Jr. who was doing business as HLS Trucking.

(f) That, as a proximate result of the collision between said vehicles, Barbara Poole Hurley sustained injuries which instantly caused her death.

(g) That Barbara Poole Hurley died on March 13, 1989, instantaneously after the collision.

There are other pertinent facts regarding the accident. Prior to the accident both defendant Miller and decedent were travelling south on R.P. 2444, a two lane road having one lane for southbound traffic and one lane for northbound traffic. The road where the accident occurred is described by the parties differently. Plaintiffs state in their appellate brief that "the portion of the roadway leading up to the point of collision was somewhat obscured by an upward grade or crest in the highway and a curve to the right. This area of the highway was marked with double yellow lines and was designated as a no-passing zone." Defendants state in their brief that "[b]ecause the road, immediately after the crest of the hill, turns to the right and goes down the hill, a vehicle travelling south on Rural Paved Road 2444 experiences a blind spot, eliminating the driver's ability to see beyond the crest of the hill and down the road ahead of him. There are no signs warning a driver travelling south that there is a blind spot beyond the hill crest." The investigating officer testified that "[a]pproximately a quarter of a mile prior to the accident scene—the whole road is extremely curvy and hilly. In this one particular place there's a gradual grade going up and you just don't see anything beyond the hill crest because it starts to go down and immediately turn to the right." Defendant Miller testified that he had travelled the road on a few prior occasions but that during those occasions he had not experienced the blind spot beyond the crest. He further testified that "I never encountered another vehicle parked on the other side of it [the crest of the hill]." Defendant Miller testified that a driver cannot see the area around the curve until the driver gets to the crest of the hill.

Defendant Miller testified that the accident occurred in a rural area where there are "mainly residences out there and woods." The posted speed limit was 55 m.p.h. There are no posted traffic signs warning drivers to reduce their speed as they approach the curve. Defendant Miller testified that his truck was traveling en-

tirely in the southbound (right-hand) lane of travel at a speed of between 50 and 55 m.p.h. Defendant Miller testified that he first observed decedent's car, which was approximately 40-50 yards (120-150 feet) away, when he reached the crest of the hill. At that time decedent's car "was parked half on, half off the [southbound lane or right-hand side of the] road at her mailbox" facing south. Defendant Miller testified that he had never encountered any vehicle at that mailbox before. The investigating officer testified that the distance from the crest of the hill to the mailbox was approximately 90 to 130 feet. The driveway to decedent's residence (on the east side of the road) was located directly across from the mailbox (which was on the west side of the road). Defendant Miller testified that when he initially saw decedent he was entirely in the southbound (right-hand) lane of travel. Defendant Miller testified that he "knew" he would hit decedent's car if he did not move into the left (northbound) lane because "I applied the brakes first off and knew—I seen [sic] right then I couldn't stop. From that point I made my decision to bear left."

Defendant Miller proceeded to travel southbound partially in the northbound (left-hand) lane. As defendant Miller approached from behind, decedent turned immediately left towards the driveway of her residence, which was located on the east side of the road. Defendant Miller testified that decedent did not activate her left turn signal. Defendant Miller testified that prior to the moment of impact "[w]hen she started her turn, I cut [the truck's wheels] back to the right and I mean when she started her turn, I lost sight, that's how close we were. . . . The only thing I remember is seeing her start to turn left or turning left and from that point on, I couldn't see her." When asked "[h]ow soon after she [decedent] turned her vehicle in front of yours was it until this accident happened?," defendant Miller responded "[l]ike that; split second." Defendant Miller stated that at the moment of impact the truck was in the northbound (left-hand) lane and that "it was somewhere around straddling the yellow line or maybe a little bit beyond." In response to the question, "if Mrs. Hurley had not moved her car after you came over the crest of this hill and moved your truck into the left-hand lane, would there have been a collision?," defendant Miller answered "no." Defendant Miller further testified that as "[f]ar as I know she [decedent] didn't" know that the truck was coming from behind her. He testified that he did not blow the truck's horn at any time.

Pursuant to G.S. 1A-1, Rule 51(b), plaintiffs filed a written request for jury instructions, which included *inter alia* a request for the submission of an instruction on the issue of last clear chance. Following the presentation of evidence, the trial court submitted to the jury the issues of negligence and contributory negligence based on the North Carolina Pattern Jury Instructions. The trial court denied plaintiffs' request for an instruction on last clear chance.

In its verdict, the jury found that plaintiffs were injured by the negligence of defendants and that the decedent by her own negligence contributed to plaintiffs' injury. Plaintiffs made a motion for new trial pursuant to G.S. 1A-1, Rule 59, on the grounds that the trial court did not submit the issue of last clear chance. The trial court denied the motion. Plaintiffs appeal.

*Wallace and Whitley, by Michael Doran, for plaintiff-appellants.*

*Wishart, Norris, Henninger & Pittman, PA, by Kenneth R. Raynor and June K. Allison, for defendant-appellees.*

EAGLES, Judge.

Plaintiffs bring forward two assignments of error. Plaintiffs assign error to the trial court's instructions regarding defendant's negligence and decedent's contributory negligence and assign error to the trial court's refusal to charge the jury on the issue of last clear chance as requested by plaintiffs pursuant to G.S. 1A-1, Rule 51(b). After a careful consideration of the briefs, record, and transcript, we: (1) find no error as to the trial court's instructions on the issues of negligence and contributory negligence, and; (2) remand for a new trial based on the trial court's failure to instruct the jury on the issue of last clear chance.

I.

In *Millis Construction Co. v. Fairfield Sapphire Valley*, 86 N.C. App. 506, 509-10, 358 S.E.2d 566, 568 (1987), this Court stated:

> It is the duty of the trial judge without any special requests to instruct the jury on the law as it applies to the substantive features of the case arising on the evidence. *Faeber v. E.C.T. Corp.*, 16 N.C. App. 429, 192 S.E.2d 1 (1972). When a party appropriately tenders a written request for a special instruction which is correct in itself and supported by the evidence, the failure of the trial judge to give the instruction,

HURLEY v. MILLER

[113 N.C. App. 658 (1994)]

at least in substance, constitutes reversible error. *Bass v. Hocutt*, 221 N.C. 218, 19 S.E.2d 871 (1942); *Faeber v. E.C.T. Corp.*, *supra.*

Regarding the burden placed upon appellant when error is assigned to an error in the trial court's charge to the jury, this Court, in *Beck v. Carolina Power & Light Co.*, 57 N.C. App. 373, 380, 291 S.E.2d 897, 901-02, *aff'd*, 307 N.C. 267, 297 S.E.2d 397 (1982), has stated:

> When an error in the judge's charge is asserted by the appellant as a basis for reversal of the verdict below, the burden is on that party not merely to demonstrate that the court's instructions were in error, but also to demonstrate that when the judge's instructions are considered in their entirety, as opposed to in fragments, the error was prejudicial to the appealing party's chance of success and amounted to the denial of a substantial right. Otherwise, reversal or a new trial is unwarranted. *Gregory v. Lynch*, 271 N.C. 198, 155 S.E.2d 488 (1967); *Burgess v. Construction Co.*, 264 N.C. 82, 140 S.E.2d 766 (1965).

We proceed with an examination of plaintiffs' assignments of error.

## II.

Plaintiffs argue that "[t]he trial court committed reversible error in failing to properly instruct the jury on the issues of Mrs. Hurley's contributory negligence and defendant Miller's negligence." We disagree.

[1] Regarding the instruction on defendant's negligence, plaintiffs argue that the trial court erred by failing to instruct the jury that defendant violated G.S. 20-150 and was negligent *per se*. G.S. 20-150 (entitled "Limitations on privilege of overtaking and passing") provides:

> (a) The driver of a vehicle shall not drive to the left side of the center of a highway, in overtaking and passing another vehicle proceeding in the same direction, unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety.

(b) The driver of a vehicle shall not overtake and pass another vehicle proceeding in the same direction upon the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed within a distance of 500 feet.

(c) The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction at any railway grade crossing nor at any intersection of highway unless permitted so to do by a traffic or police officer. For the purposes of this section the words "intersection of highway" shall be defined and limited to intersections designated and marked by the Department of Transportation by appropriate signs, and street intersections in cities and towns.

(d) The driver of a vehicle shall not drive to the left side of the centerline of a highway upon the crest of a grade or upon a curve in the highway where such centerline has been placed upon such highway by the Department of Transportation, and is visible.

(e) The driver of a vehicle shall not overtake and pass another on any portion of the highway which is marked by signs, markers or markings placed by the Department of Transportation stating or clearly indicating that passing should not be attempted.

(f) The foregoing limitations shall not apply upon a one-way street nor to the driver of a vehicle turning left in or from an alley, private road, or driveway.

Regarding the issue of contributory negligence, plaintiffs, relying on *Walker v. Bakeries Co.*, 234 N.C. 440, 67 S.E.2d 459 (1951), argue that they "requested that the jury be instructed that 'Mrs Hurley . . . is not required to anticipate that the overtaking motorist, defendant Miller, will attempt to pass in violation of the statute.'" (Alteration in original.) Specifically, plaintiffs' requested instruction stated as follows:

Although G.S. 20-150(d) is designed primarily to prevent collision between an overtaking automobile and a vehicle coming from the opposite direction, its provisions are germane to litigation between an overtaking motorist, such as Mr. Miller, and Barbara Hurley, the driver of an overtaken vehicle, when, as here, the collision occurred while the defendant Miller at-

tempted to pass Barbara Hurley upon a marked curve. In this regard, Mrs. Hurley, the driver of the overtaken vehicle, is not required to anticipate that the overtaking motorist, defendant Miller, will attempt to pass in violation of the statute.

We find *Walker*, the case cited by plaintiffs, readily distinguishable. Plaintiffs quote *Walker* for the proposition that "when attempting to turn left across a lane of travel which is in a no passing zone, the overtaken motorist 'is certainly not required in such case to anticipate that the latter will attempt to pass in violation of the statute.' [*Id.* at 443,] 67 S.E.2d at 461." However, in *Walker*, there was no initial act of negligence on the part of the plaintiff; whereas here, decedent's initial act of negligence occurred when she parked her car halfway, instead of entirely, on the shoulder of the road, thus deliberately preventing the free flow of traffic apparently for the sake of convenience given the proximity of her car to the mailbox. (Plaintiffs state in their brief that "[i]f she [decedent] were negligent, in any way, her negligence arose from being stationary on the highway for reasons apparently unrelated to traffic flow.") Decedent's initial act of negligence justified the shift of defendant's vehicle to the left of the center line in this no passing zone. *See* G.S. 20-146(a) ("Upon all [highways] of sufficient width a vehicle shall be driven upon the right half of the highway except as follows: . . . (2) When an obstruction exists making it necessary to drive to the left of the center of the highway; provided, any person so doing shall yield the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard."). Given that defendant Miller was driving a multi-ton truck and apparently did not have an opportunity to stop if he had remained in the southbound (right-hand) lane of travel, we conclude on this record that defendant Miller had to enter the northbound (left-hand) lane of travel in his attempt to avoid the collision. Concomitantly, because of her initial act of negligence, decedent had the duty to check for vehicles approaching from behind her when she made the sudden and immediate turn to the left, which the uncontroverted evidence shows was made without activation of her vehicle's left turn signal. *See generally, Saunders v. Warren*, 267 N.C. 735, 737-38, 149 S.E.2d 19, 20-21 (1966) (" 'So the driver of the stopped vehicle must take such precautions as would reasonably be calculated to prevent injury, whether by the use of lights, flags, guards, or other practical means, and failing to give such warning may con-

stitute negligence' "). We note that this factual situation involving defendant Miller's decision to attempt to pass decedent's vehicle (the obstruction) is clearly distinguishable from a factual situation in which no obstruction exists and in which a defendant voluntarily passes a plaintiff's vehicle due to mere impatience or inadvertence in clear contravention of a statute.

Furthermore, the factual situation presented here is inappropriate for the application of negligence *per se*. Regarding the doctrine of negligence *per se*, our Supreme Court has stated:

> It is the generally accepted view that the violation of a statute enacted for the safety and protection of the public constitutes negligence *per se*, i. e., negligence as a matter of law. The statute prescribes the standard, and the standard fixed by the statute is absolute. The common law rule of ordinary care does not apply — proof of the breach of the statute is proof of negligence. The violator is liable if injury or damage results, irrespective of how careful or prudent he has been in other respects. No person is at liberty to adopt other methods and precautions which in his opinion are equally or more efficacious to avoid injury. But causal connection between the violation and the injury or damage sustained must be shown; that is to say, proximate cause must be established. In short, where a statute or municipal ordinance imposes upon any person a specific duty for the protection or benefit of others, if he neglects to perform that duty, he is liable to those for whose protection or benefit it was imposed for any injuries or damage of the character which the statute or ordinance was designed to prevent, and which was proximately produced by such neglect, *provided the injured party is free from contributory negligence. Aldridge v. Hasty*, 240 N.C. 353, 82 S.E.2d 3[3]1; 38 Am. Jur., Negligence, § 158, pp. 827-829; 65 C.J.S., Negligence, § 19, pp. 418-420.

*Cowan v. Transfer Co. and Carr v. Transfer Co.*, 262 N.C. 550, 554, 138 S.E.2d 228, 231 (1964) (emphasis added). *See also Brower v. Robert Chappell & Assoc. Inc.*, 74 N.C. App. 317, 320, 328 S.E.2d 45, 47, *disc. review denied*, 314 N.C. 537, 335 S.E.2d 313 (1985) ("It is well-established precedent in this State that contributory negligence on the part of the plaintiff is available as a defense in an action which charges the defendant with the violation of a statute or negligence *per se*."). We find support for the

HURLEY v. MILLER

[113 N.C. App. 658 (1994)]

distinguishability of *Walker* from the facts presented here by the writings of Professors Prosser and Keeton:

> The legislature, within its constitutional powers, may see fit to place the burden of injuries "upon those who can measurably control their causes, instead of upon those who are in the main helpless in that regard." In such a case the defendant may become liable on the mere basis of his violation of the statute. No excuse is recognized, and neither reasonable ignorance nor all proper care will avoid liability. Such a statute falls properly under the head of strict liability, rather than any basis of negligence — although the courts not infrequently continue, out of habit, to speak of the violation as "negligence per se."
>
> . . . .
>
> These statutes are, however, the exception, and in the aggregate they make up only a very small percentage of the total safety legislation. Normally no such interpretation will be placed upon a statute, and no such conclusion reached, unless the court finds that it was clearly the purpose of the legislature. In the ordinary case, all that is required is reasonable diligence to obey the statute, and it frequently has been recognized that a violation of the law may be reasonable, and may be excused. . . .
>
> . . . . [A] valid excuse is that of emergency, as where one drives on the left because the right is blocked. . . .

W. P. Keeton, Ed., *Prosser and Keeton on Torts*, at 227-28 (5th ed. 1984) (footnotes omitted) (hereinafter "Prosser"). *See also* Restatement (Second) of Torts § 288A (1965). As our Supreme Court expressly stated in *Walker*:

> Although the statute is *designed primarily to prevent collision between an overtaking automobile and a vehicle coming from the opposite direction*, its provisions are germane to litigation between an overtaking motorist and the driver of an overtaken vehicle if there is evidence to the effect that the underlying accident was occasioned by an unsuccessful effort on the part of the former to pass the latter upon a marked curve. The driver of the overtaken vehicle is certainly not required in such case to anticipate that the latter will attempt to pass in violation of the statute.

*Walker* at 443, 67 S.E.2d at 461 (emphasis added). This is not simply a case where "the underlying accident was occasioned by an unsuccessful effort on the part of the [defendant] to pass the [decedent] upon a marked curve," *id.*; rather, from the evidence presented at trial a jury could reasonably conclude that defendant took reasonable action in light of the uncontroverted evidence of decedent's initial act of negligence. We note that were it not for decedent's initial act of obstructing the road, then the statute would be "germane," *id.*, to the facts presented here. *See, e.g.*, Prosser at 229, n.88 ("The emergency must of course be such that there is no reasonable opportunity to obey the statute. *See Murray v. O & A Express, Inc.*, Tex. 1982, 630 S.W.2d 633 (truck breakdown insufficient emergency to excuse failure to activate blinkers)"). This assignment of error fails.

### III.

[2] Plaintiffs argue that "[t]he trial court erroneously failed to submit the issue of last clear chance to the jury when the defendants' negligent failure to exercise the last clear chance to avoid injury to [decedent] arose from the evidence presented at trial." We agree.

The doctrine of last clear chance would allow plaintiffs to recover despite any contributory negligence by decedent if defendant Miller, in the exercise of reasonable care and prudence, had the last clear chance to avoid the accident and failed to do so. *Hales v. Thompson*, 111 N.C. App. 350, 355, 432 S.E.2d 388, 392 (1993); *Williams v. Odell*, 90 N.C. App. 699, 703, 370 S.E.2d 62, 65, *disc. review denied*, 323 N.C. 370, 373 S.E.2d 557 (1988). The essential elements of the last clear chance doctrine have been set forth in several North Carolina cases. This Court has enumerated the following five prerequisites for application of the doctrine:

> (1) Plaintiff, by his own negligence, placed himself in a position of peril from which he could not escape; (2) defendant saw, or by the exercise of reasonable care should have seen and understood, the perilous position of plaintiff; (3) defendant had the time and the means to avoid the accident if defendant had seen or discovered plaintiff's perilous position; (4) the defendant failed or refused to use every reasonable means at his command to avoid impending injury to plaintiff; and (5) plaintiff was injured as a result of defendant's failure or refusal to avoid impending injury.

**HURLEY v. MILLER**

[113 N.C. App. 658 (1994)]

*Williams v. Lee Brick and Tile*, 88 N.C. App. 725, 728, 364 S.E.2d 720, 721 (1988) (*citing Pegram v. Pinehurst Airline, Inc.*, 79 N.C. App. 738, 740, 340 S.E.2d 763, 765 (1986); *Wray v. Hughes*, 44 N.C. App. 678, 262 S.E.2d 307, *disc. review denied*, 300 N.C. 203, 269 S.E.2d 628 (1980)). It is well established that the last clear chance does not mean a last possible chance. *Williams*, 88 N.C. App. at 729, 364 S.E.2d at 722; *Grant v. Greene*, 11 N.C. App. 537, 181 S.E.2d 770 (1971); *Battle v. Chavis*, 266 N.C. 778, 147 S.E.2d 387 (1966). In distinguishing between the two, our Supreme Court has stated:

> [T]he fundamental difference between a "last clear chance" and a "last possible chance," is that defendant must have "*the time and the means* to avoid the injury to the plaintiff by the exercise of reasonable care after she discovered or should have discovered plaintiff's perilous position." *Watson* [v. *White*], 309 N.C. [498] at 505-06, 308 S.E.2d [268] at 273 [1983] (emphasis added). The reasonableness of a defendant's opportunity to avoid doing injury must be determined on the particular facts of each case. *See Exum v. Boyles*, 272 N.C. [567] at 575, 158 S.E.2d [845] at 852 [1968].

*VanCamp v. Burgner*, 328 N.C. 495, 499, 402 S.E.2d 375, 377, *rehr'g denied*, 329 N.C. 277, 407 S.E.2d 854 (1991) (emphasis in original). *See also Ingram v. Smoky Mountain Stages, Inc.*, 225 N.C. 444, 448, 35 S.E.2d 337, 340 (1945) (doctrine of last clear chance is "invoked only in the event it is made to appear that there was an appreciable interval of time between plaintiff's negligence and his injury during which the defendant, by the exercise of ordinary care, could or should have avoided the effect of plaintiff's prior negligence"); *Mathis v. Marlow*, 261 N.C. 636, 639, 135 S.E.2d 633, 635 (1964). In order to be entitled to the submission of a jury instruction on the issue of last clear chance, plaintiffs must meet the burden of providing substantial evidence which, when viewed in the light most favorable to plaintiffs, will support a reasonable inference that each of the five essential elements of last clear chance exists. *Hales*, 111 N.C. App. at 355, 432 S.E.2d at 392. Defendant Miller testified that he knew of decedent's position of peril immediately upon seeing decedent's vehicle by the mailbox:

> Q: And as soon as you saw her [decedent's] car on the roadway, you knew you might hit her if you didn't get in the left lane; is that correct?

A: I knew I would hit her.

Q: From that point, the first time you saw her?

A: Well, no, not the first point. I applied the brakes first off and knew—I seen [sic] right then I couldn't stop. From that point I made my decision to bear left.

Q: So you definitely knew you didn't have time to stop as you saw her?

A: Yes.

Q: As far as trying to stop, why would you even try to stop unless you thought you were going to hit her?

A: It's just natural instinct, you hit your brakes something [sic] that close to you.

Q: If you didn't hit your brakes you'd hit her, right?

A: I'd have hit her anyway.

Q: That's from the time you first saw her?

A: Yeah.

Q: You didn't blow your horn as your first instinct did you?

A: No, sir.

Q: Didn't blow your horn at all?

A: No, sir.

. . . .

Q: And that's at the crest of the hill when you can first see her?

A: Yes.

. . . .

Q: When did you first see her car start to turn from her mailbox to the left?

A: When I was veering left.

Q: When you first saw her car was it moving?

A: No.

HURLEY v. MILLER

[113 N.C. App. 658 (1994)]

Q: So her car started moving after you came over the crest of that hill?

A: That's correct.

Q: Mr. Miller, had her car not moved would you have struck her car?

A: No.

Q: And why is that?

A: Because I had got over far enough to avoid hitting her.

. . . .

Q: Mr. Miller, if Mrs. Hurley had not moved her car after you came over the crest of this hill and moved your truck into the left-hand lane, would there have been a collision?

A: No.

Defendants argue that "the doctrine of last clear chance did not apply to the case at hand because the evidence could not support an inference that defendant Miller had the time or means to avoid the collision after the Hurley [decedent's] vehicle came into his path of travel." We disagree. The evidence showed, through defendant Miller's own testimony, that when defendant Miller initially saw decedent's vehicle defendant Miller's truck was approximately 120 to 150 feet from decedent's vehicle and that defendant Miller had time to "mash" the truck's brakes "to the floor." Under the last clear chance doctrine, a defendant must use "every reasonable means" to avoid injury to the plaintiff. *Williams*, 88 N.C. App. at 728, 364 S.E.2d at 721; *Hales*, 111 N.C. App. at 356-57, 432 S.E.2d at 392-93. Here, we conclude that defendant Miller failed to do so. Defendant Miller failed to blow the horn *at any time after* initially seeing that decedent's vehicle was resting in a perilous position by the mailbox in the direct path of the multi-ton truck which he was driving. *See Lowe v. Futrell*, 271 N.C. 550, 553, 157 S.E.2d 92, 95 (1967) ("The common law imposes upon [a motorist] the duty to use reasonable care to avoid injury to other persons upon the highway and, for that purpose, to blow his horn if, under like circumstances and conditions, a reasonably prudent driver would have done so"). Furthermore, defendant Miller's testimony discloses that he knew of decedent's presence in the automobile and that he failed to blow the horn *after* realizing that the brakes would

HURLEY v. MILLER

[113 N.C. App. 658 (1994)]

not stop the truck in time to prevent a potential collision with decedent's vehicle at the mailbox. From this evidence, it is clear that defendant Miller appreciated the danger to decedent as he testified that he shifted to the left lane to avoid the collision. While defendant Miller's immediate veering to the left temporarily took the truck out of the direct path of decedent's vehicle at the mailbox, it provided decedent with no warning of the truck's presence in the blind curve area. *See Earle v. Wyrick*, 286 N.C. 175, 178, 209 S.E.2d 469, 471 (1974) (holding that plaintiff's estate was entitled to a last clear chance instruction where defendant stated that she saw decedent "only a split second before the impact" and where "[a]ll the evidence indicate[d] the defendant failed to sound the horn"); *Vernon v. Crist*, 291 N.C. 646, 655, 231 S.E.2d 591, 596-97 (1977) (holding that plaintiff was entitled to a last clear chance jury instruction based upon defendant's knowledge of plaintiff's presence and defendant's failure to warn plaintiff). Viewing this evidence in the light most favorable to plaintiffs, we conclude that a jury could reasonably find that in the time it took defendant Miller to apply the truck's brakes and steer to the left, he had both the time and opportunity to avoid the collision by blowing the truck's horn, thereby providing an adequate warning to decedent prior to her decision to move her vehicle from the mailbox and towards the northbound (left-hand) lane towards the direction of her residential driveway. Indeed, had defendant Miller blown the horn, decedent may never have moved her vehicle from the mailbox location. Accordingly, we hold that the trial court erred by failing to submit an instruction on the issue of last clear chance. Finally, we note that in "borderline cases" involving "issues of due care and reasonableness of actions under the circumstances . . . fairness and judicial economy suggest that courts should decide in favor of submitting issues to the jury." *Radford v. Norris*, 74 N.C. App. 87, 88-89, 327 S.E.2d 620, 621-22, *disc. review denied*, 314 N.C. 117, 332 S.E.2d 483 (1985) (*citing Cunningham v. Brown*, 62 N.C. App. 239, 302 S.E.2d 822, *disc. review denied*, 308 N.C. 675, 304 S.E.2d 754 (1983)). *See e.g., Reber v. Booth*, 335 N.C. 170, 435 S.E.2d 769 (1993) (per curiam).

IV.

For the reasons stated, we find no error as to the trial court's instructions regarding the issues of negligence and contributory negligence. We remand for a new trial in which the issue of last clear chance shall be submitted to the jury.

HURLEY v. MILLER

[113 N.C. App. 658 (1994)]

New trial.

Judge ORR concurs.

Judge COZORT concurs in part and dissents in part.

Judge COZORT concurring in part and dissenting in part.

I concur with the majority's conclusion that the trial court did not err in its instructions on negligence and contributory negligence. I disagree, however, with the majority's conclusion that the trial court should have instructed on last clear chance.

I find the record devoid of any evidence that the defendant had the last clear chance to avoid the accident. The evidence showed that the decedent stopped her car "half on, half off" the southbound lane of travel. Defendant Miller, who was driving in the southbound lane within the posted speed limit, realized that he could not stop before hitting decedent's car and steered his truck to the left far enough to avoid hitting decedent's car. As defendant Miller's truck approached decedent's car, the decedent, without giving a left turn signal, turned left into the path of defendant Miller's truck a "split second" before defendant Miller's truck reached decedent's car. Miller swerved back to the right; however, there was not enough time to avoid the collision.

I find no evidence that defendant Miller had the means to avoid the collision after the decedent started her left turn into the path of defendant Miller's truck. This lack of evidence of time to avoid the collision distinguishes this case from *VanCamp v. Burgner*, 328 N.C. 495, 402 S.E.2d 375 (1991), and the trial court correctly refused to submit last clear chance to the jury.

I vote no error.