JAMES LOUIS COWAN v. MURROWS TRANSFER, INC. AND ROGER DALE BUCHANAN.

AND

ROBERT LEE CARR v. MURROWS TRANSFER, INC. AND ROGER DALE BUCHANAN.

(Filed 14 October, 1964.)

**1. Automobiles § 41d—**

Evidence tending to show that defendant had followed plaintiff's vehicle on the highway for about two miles at a speed of approximately 45 miles per hour, that as plaintiff's vehicle slowed down and was turning left into a private driveway defendant's vehicle, which was attempting to pass, struck plaintiff's vehicle, that defendant gave no warning of his intention to pass, with evidence favorable to plaintiff that plaintiff gave timely signal for a left turn, *is held* sufficient to be submitted to the jury on the issue of defendant's negligence.

**2. Negligence § 26—**

Nonsuit on the ground of contributory negligence is proper only when plaintiff's own evidence establishes this defense as the sole reasonable conclusion.

**3. Automobiles § 8—**

G.S. 20-154(a) requires that a motorist before turning from a direct line should first ascertain that such movement can be made in safety, and a violation of this provision is negligence *per se*, but a motorist is not required to ascertain that a turning motion is absolutely free from danger.

**4. Automobiles § 42h—**

Evidence tending to show that plaintiff looked in his rear view mirror some 400 feet before making a left turn and looked again when 40 feet away from his turn, and saw defendant's following vehicle in his right hand lane, that plaintiff did not look again to the rear, and was struck by defendant's vehicle which was attempting to pass him as he was making his turn, *is held* not to disclose a violation of G.S. 20-154(a) as a matter of law, since under the circumstances of the case whether plaintiff could reasonably assume that he could make the movement in safety is a question for the jury.

**5. Automobiles § 6—**

Ordinarily, the violation of a statute or ordinance enacted for the safety of motorists on the highway is negligence *per se* and proof of breach of the statute or ordinance establishes negligence, since in such cirmumstance the common law rule does not obtain but the statute itself imposes the duty, and the question of proximate cause is to be determined by the other facts and circumstances.

**6. Same—**

Where a statute or ordinance provides that its violation should not be negligence *per se*, the common law obtains and the duty is to exercise due care under the circumstances, so that whether such violation constitutes

negligence and whether such negligence constitutes a proximate cause of injury is to be determined from facts and circumstances of the case.

**7. Automobiles § 46—**

> An instruction that G.S. 20-149(b) places the duty on a motorist to blow his horn as a reasonably prudent person would do in the act of passing and to give such warning in reasonable time to avoid an injury which would likely result from a left turn by the preceding motorist, all in the discharge of the duty to use reasonable care under the circumstances, *is held* without prejudicial error, and objection that the court did not sufficiently explain that the violation of the statute should not constitute negligence *per se* is untenable.

**8. Trial § 33—**

> In charging the law contained in an applicable statute it is preferable for the court to give a plain and simple application of the principles of law rather than to read to the jury the technical language of the statute.

APPEAL by defendants from *Peel, J.,* March 1964 Civil Session of PITT.

Actions to recover for injury and damages resulting from a collision of motor vehicles.

The collision occurred about 1:00 P.M., 14 August 1963, on U. S. Highway 264 about 6 miles east of Farmville, N. C. The paved portion of the highway is 20 feet wide and is level and straight for a distance of ½ mile in each direction from the point of collision. The highway runs generally east and west. Plaintiff Carr was proceeding eastwardly, operating a refrigerated milk truck belonging to his employer, plaintiff Cowan. Defendant Buchanan was following the milk truck, operating a tractor-trailer of his employer, the corporate defendant. As the milk truck was turning left to enter a private driveway on the north side of the highway, it was struck by the tractor-trailer which was attempting to pass. The tractor-trailer had been following the milk truck about two miles; each vehicle had been travelling at a speed of approximately 45 miles per hour. The weather was clear and the highway dry.

Plaintiffs' version of the accident: Carr put on the electric turn signal, indicating a left turn, 500 feet before reaching the driveway, and kept the signal on continuously until the moment of impact. When 400 feet from the driveway he observed in his rear-view mirror that the tractor-trailer was 400 feet behind him. He looked in the mirror again when he was about to begin the turn, 40 feet from the driveway, and saw that the tractor-trailer was then about 300 to 400 feet to the rear, in the south lane, with no indication that it would attempt to pass the milk truck. Carr did not look again. He made a turn slightly to the

right, without getting off the hardsurface, to give him a longer approach to the narrow driveway. He then made a sharp turn to the left and was struck at the north edge of the hardsurface as he was about to enter the driveway. There was no audible warning from the tractor-trailer. Carr had gradually decreased speed after putting on the turn signal and in making the turn was travelling 5 to 10 miles per hour.

Defendants' version: There was no turn signal from the milk truck, and nothing to indicate an intention to turn from the highway. When the tractor-trailer was about 160 feet to the rear of the milk truck, Buchanan gave a left turn signal and pulled to the north lane preparing to pass. The milk truck was decreasing speed and Buchanan reduced speed to 40 miles per hour. The milk truck pulled to the right as if to yield. When about 87 feet from the driveway and 40 feet from the milk truck, Buchanan reached for his horn. The milk truck swerved sharply to the left directly in the path of the tractor-trailer. Because of the emergency thus created, Buchanan took his hand from the horn and put it back on the wheel. He did not sound the horn. He was unable to avoid the collision. The milk truck made the turn at a speed of 10 to 15 miles per hour.

Plaintiff Carr seeks recovery for his personal injuries, plaintiff Cowan for damage to the milk truck. Corporate defendant counterclaims for damage to the tractor-trailer.

The jury found that defendants were negligent and plaintiffs were not contributorily negligent, and awarded plaintiffs damages.

*James & Speight for defendant appellants.*
*Lewis & Rouse and Gaylord & Singleton for plaintiff appellees.*

MOORE, J. Defendants assign as error the denial of their motions for nonsuit.

From the evidence favorable to plaintiffs the jury could infer that defendant Buchanan was inattentive to Carr's left turn signal given continuously for 500 feet, was inattentive to the turning movements of the milk truck which were begun when the tractor-trailer was at least 300 feet away, continued forward at a speed of at least 40 miles per hour when the milk truck had greatly reduced speed in turning, and attempted to pass without giving audible warning of his intention to do so when he should have observed that the milk truck was in the act of making a left turn, and such negligence (with respect to lookout, speed, control and lack of warning, as alleged by plaintiffs) was a proximate cause of the collision.

Defendants contend however that the plaintiffs were contributorily negligent as a matter of law. This contention is based on plaintiff Carr's testimony that he looked in his rear-view mirror when 40 feet from the driveway and "never looked back again." It is insisted that Carr's failure to continue his lookout violates G.S. 20-154(a) which provides that "the driver of any vehicle upon a public highway before . . . turning from a direct line shall first see that such movement can be made in safety . . ." A violation of this provision is negligence *per se. Mitchell v. White,* 256 N.C. 437, 124 S.E. 2d 137; *Grimm v. Watson,* 233 N.C. 65, 62 S.E. 2d 538. We held in *Tallent v. Talbert,* 249 N.C. 149, 105 S.E. 2d 426, that failure to look during the last 90 feet before turning constituted contributory negligence as a matter of law. See also *Badders v. Lassiter,* 240 N.C. 413, 82 S.E. 2d 357; *Gasperson v. Rice,* 240 N.C. 660, 83 S.E. 2d 665.

Nonsuit may not be granted on the ground of contributory negligence unless plaintiff's own evidence establishes this defense as the sole reasonable conclusion. In our opinion it is debatable whether Carr's failure to look again constitutes a violation of G.S. 20-154(a) as a matter of law on this record. He testified in effect that he looked when he was ready to begin his turning movement and observed that the tractor-trailer was then at least 300 feet to the rear. Whether, under such circumstances, he could reasonably assume that he could make the movement in safety is a question for the jury. A motorist is not required to ascertain that a turning motion is absolutely free from danger. *Lemons v. Vaughn,* 255 N.C. 186, 120 S.E. 2d 527; *White v. Lacey,* 245 N.C. 364, 96 S.E. 2d 1. The motion for nonsuit was properly overruled.

Defendants also contend that the trial judge committed prejudicial error in failing to give the jury adequate instructions with respect to G.S. 20-149(b). As originally written this statute provided that "The driver of an overtaking motor vehicle not within a business or residence district . . . shall give audible warning with his horn or other warning device before passing or attempting to pass a vehicle proceeding in the same direction." A violation of this provision was formerly regarded as negligence *per se. Lyerly v. Griffin,* 237 N.C. 686, 75 S.E. 2d 730. In 1959 the Legislature placed a comma at the end of the foregoing provision and added the following: "but his failure to do so shall not constitute negligence or contributory negligence *per se* in any civil action; although the same may be considered with other facts in the case in determining whether the driver of the overtaking vehicle was guilty of negligence or contributory negligence." See *Boykin v. Bissette,* 260 N.C. 295, 132 S.E. 2d 616. Defendants say that the charge does not give them the benefit of the 1959 amendment and does not ex-

plain the meaning of the clause, "shall not constitute negligence . . . *per se.*"

It is the generally accepted view that the violation of a statute enacted for the safety and protection of the public constitutes negligence *per se, i. e.,* negligence as a matter of law. The statute prescribes the standard, and the standard fixed by the statute is absolute. The common law rule of ordinary care does not apply — proof of the breach of the statute is proof of negligence. The violator is liable if injury or damage results, irrespective of how careful or prudent he has been in other respects. No person is at liberty to adopt other methods and precautions which in his opinion are equally or more efficacious to avoid injury. But causal connection between the violation and the injury or damage sustained must be shown; that is to say, proximate cause must be established. In short, where a statute or municipal ordinance imposes upon any person a specific duty for the protection or benefit of others, if he neglects to perform that duty, he is liable to those for whose protection or benefit it was imposed for any injuries or damage of the character which the statute or ordinance was designed to prevent, and which was proximately produced by such neglect, provided the injured party is free from contributory negligence. *Aldridge v. Hasty,* 240 N.C. 353, 82 S.E. 2d 311; 38 Am. Jur., Negligence, § 158, pp. 827-829; 65 C.J.S., Negligence, § 19, pp. 418-420.

Where, as in G.S. 20-149(b), a violation is declared not to be negligence *per se,* the common law rule of ordinary care applies, and a violation is only evidence to be considered with other facts and circumstances in determining whether the violator used due care.

The distinction, between a violation of a statute or ordinance which is negligence *per se* and a violation which is not, is one of duty. In the former the duty is to obey the statute, in the latter the duty is due care under the circumstances. In both instances other facts and circumstances are to be considered on the question of proximate cause; in the latter, other facts and circumstances are to be considered also on the question of negligence. In practical effect the real distinction is not so great as seems apparent from the definitions.

Defendants specifically call in question the following portions of the charge:

> "Now, the duty that this particular statute [G.S. 20-149(b)] places on a motorist is not merely to blow his horn in the act of passing, but it is to blow a horn as a reasonable person would do in the act of passing. The duty imposed by the statute upon the driver of the overtaking vehicle to sound his horn before attempt-

ing to pass must be regarded as requiring that warning be given to the driver of the vehicle being overtaken in reasonable time to avoid the injury which would likely result from a left turn. So you can see that, as you will be seeing throughout here, that the, that it boils down to a duty to use reasonable care.

"The horn must be blown in reasonable time to serve the purpose for which a horn is normally blown in a passing situation."

These instructions with reference to *timely* giving of an audible warning are in accord with our decisions. *Boykin v. Bissette, supra; Sheldon v. Childers,* 240 N.C. 449, 82 S.E. 2d 396.

The 1959 amendment of G.S. 20-149(b) does not mean that an overtaking and passing motorist is relieved of all duty to give audible warning; it simply means that a failure to give such warning may or may not constitute a want of due care, depending upon the circumstances of the particular case.

The judge did not instruct the jury that defendant's failure to give audible warning was negligence *per se.* On the other hand, he did not read the statute to the jury, nor state *in totidem verbis* that failure to give audible warning is *not* negligence *per se.* To have done so would have had little, if any, meaning for the jury. The judge is not required to read to the jury the technical language of statutes; a plain and simple application of the principles involved is preferable. *Pittman v. Swanson,* 255 N.C. 681, 122 S.E. 2d 814; *Chambers v. Allen,* 233 N.C. 195, 63 S.E. 2d 212.

It is clear from a consideration of the charge as a whole that the jury was told that defendant's duty was reasonable care under the circumstances. Moreover, it appears that defendants were not contending that no audible warning was required under the circumstances, but that because of an emergency created by plaintiff's negligence defendant Buchanan was suddenly required to make a choice between blowing his horn and attempting to control his vehicle. The charge with respect to G.S. 20-149(b) dealt mainly with this theory of the matter. It is our opinion that the errors, if any, in the court's instructions are not sufficiently prejudicial to require a new trial.

No error.