WILLIAM EDWARD HARRIS v. BERNICE LEO FREEMAN

No. 7314SC26

(Filed 25 April 1973)

1. **Automobiles § 75— failure to signal intention to stop — no time to give signal**

   In an action to recover damages sustained when defendant's truck struck the rear of plaintiff's car which stopped suddenly when the lead car in the line of traffic in which the vehicles were traveling stopped at an intersection with its left turn signal on, the trial court erred in submitting an issue of plaintiff's contributory negligence in allegedly failing to give a signal indicating that he was going to stop where defendant's own evidence established that plaintiff had no time in which to give a signal. G.S. 20-154.

2. **Automobile § 10— failure to give stop signal — not negligence per se**

   Failure to give a signal of intention to stop where the operation of other vehicles might be affected in violation of G.S. 20-154 is not negligence *per se*.

APPEAL by plaintiff from *Cooper, Judge,* 15 May 1972 Session of DURHAM County Superior Court.

Plaintiff instituted this action to recover for personal injury and property damage sustained in an automobile collision allegedly due to the negligence of defendant.

At trial before a jury plaintiff introduced evidence which tended to show the following:

On 9 October 1970, at approximately 6:15 p.m., plaintiff was operating his Pontiac automobile in a northerly direction on Alston Avenue in Durham, N. C. At the intersection of Main Street and Alston Avenue, defendant pulled up behind plaintiff, who had stopped in obedience to a traffic light. Both vehicles then continued in a northerly direction on Alston Avenue. There were two cars in front of the plaintiff's vehicle also proceeding northerly along Alston Avenue. From the intersection of Main Street and Alston Avenue to the point of collision is approximately nine blocks. After leaving the intersection of Main Street and Alston Avenue, the lead vehicle two cars in front of plaintiff displayed its left turn signal at each intersection and would veer out of line as if to make a left turn. This happened at least three times although the vehicle never made a left turn. As the lead vehicle reached Drew Street, it displayed a left turn signal again and came to a complete stop. The vehicle

behind it also stopped as did plaintiff whose car was third in line. At the time plaintiff stopped he looked in his rear view mirror and saw defendant's truck coming. Plaintiff held out his left hand for a stop or slow down signal, and, when it appeared that defendant's vehicle was not slowing down, he started waving his hand. When it finally appeared that defendant's vehicle was not going to slow down, plaintiff put his right foot on the brakes and then was hit from the rear. Approximately 30 feet of skid marks were observed leading up to the position where defendant's vehicle had stopped following the collision.

It was stipulated by the parties that the weather was clear, the street was dry, and that plaintiff's vehicle was stopped at the time of the collision.

Defendant testified that he was operating his vehicle in the line of traffic at about 10 to 15 miles per hour and had observed the erratic behavior of the lead vehicle, noting that traffic had built up to about 19 vehicles behind the lead car. He stated that he did not know that the lead car had come to a stop, but when he saw plaintiff's car "nosedive," he slammed on brakes and slid into the rear of plaintiff's car. Defendant also testified that he did not see plaintiff give any signal indicating that he was going to stop and further testified that there would not have been time for plaintiff to give any hand signal because "all anybody had time to do was throw on brakes."

Defense witness Arthur Bateman, driver of the vehicle immediately following that of the defendant, also testified that he did not see plaintiff give any hand signal and that there was "No time interval between the time that the plaintiff's vehicle came to a stop and the impact between his vehicle and the defendant's." Bateman further testified that "[a]ll the cars came to a stop together with every wheel sliding," and that his own vehicle slightly bumped the rear of defendant's vehicle.

The lead car and the car immediately in front of the plaintiff drove off following the collision. No other vehicles in the line of traffic were involved in the collision.

Following the presentation of the evidence by both sides, plaintiff's motion objecting to the submission of the issue of his contributory negligence to the jury was denied. The jury then found defendant negligent and the plaintiff contributorily neg-

Harris v. Freeman

ligent and from a judgment dismissing the action, plaintiff appealed.

Bryant, Lipton, Bryant and Battle, by Victor S. Bryant, Jr., for plaintiff appellant.

Haywood, Denny and Miller, by George W. Miller, Jr., for defendant appellee.

MORRIS, Judge.

Plaintiff asserts on appeal that the trial court. erred in submitting the issue of contributory negligence to the jury and in declaring and explaining the law relating to such issue.

In North Carolina, a defendant who asserts the contributory negligence of plaintiff as a defense has the burden of proving it, and a contention that certain acts or conduct of the plaintiff constituted contributory negligence should not be submitted to the jury unless there is evidence from which such conduct might reasonably be inferred. In determining the sufficency of that evidence the defendant is entitled to have any evidence tending to establish contributory negligence considered in the light most favorable to him and, if diverse inferences can reasonably be drawn from it, the evidence must be submitted to the jury upon proper instructions. *Atkins v. Moye*, 277 N.C. 179, 176 S.E. 2d 789 (1970) ; *Jones v. Holt*, 268 N.C. 381, 150 S.E. 2d 759 (1966).

[1] In asserting the defense of contributory negligence, defendant alleged in his answer that plaintiff, without first giving a signal or notice of any kind, stopped suddenly thereby causing a collision to occur between the two vehicles. Plaintiff's and defendant's evidence as to whether a signal was given is in conflict. However, defendant testified that plaintiff did not have time to give any arm signal or hold his hand out the window "and all anybody had time to do was throw on brakes." Defense witness Bateman similarly testified that there was no time interval between the time plaintiff's vehicle came to a stop and the collision with defendant.

"G.S. 20-154, which provides that the driver of a motor vehicle shall not stop without first seeing that he can do so in safety and that he must give a signal of his intention where the operation of other cars might be affected, is not

applicable where the driver has no choice." *Griffin v. Ward,* 267 N.C. 296, 298, 148 S.E. 2d 133 (1966).

In *Griffin,* the driver was confronted with a situation which demanded that he stop because the line of cars in front of him had done so. Because it had been raining and the windows of his car were up, he could not give a hand signal.

In the case at hand, even if a jury should believe that plaintiff failed to give any signal indicating that he was going to stop, defendant's own evidence established that plaintiff had no time in which to give a signal and therefore was under no statutory duty to do so. Plaintiff's alleged failure to follow the requirements of G.S. 20-154 was the sole basis of defendant's plea of contributory negligence and the primary basis of trial judge's instructions on the issue. We hold that there was insufficient evidence to submit such an issue to the jury.

[2]    Assuming *arguendo* that the issue of contributory negligence was properly submitted to the jury, and we think it was not, the trial court further erred in giving an instruction to the effect that a violation of G.S. 20-154 is negligence *per se.* The following instruction is taken from the judge's charge to the jury:

"I instruct you that a failure to give such a signal as required by this statute is negligence."

Prior to 1 July 1965 a violation of G.S. 20-154 had been held by the North Carolina Supreme Court to be negligence *per se: Cowan v. Transfer Co.,* 262 N.C. 550, 138 S.E. 2d 228 (1964). However, the following proviso was added to G.S. 20-154(b) by Chapter 768 of the 1965 Session Laws effective 1 July 1965:

"[P]rovided further that the violation of this section shall not constitute negligence per se."

In interpreting G.S. 20-154 as amended, this Court has stated:

"Since a violation of G.S. 20-154 is no longer to be considered negligence *per se,* the jury if they find as a fact that the statute was violated, must consider the violation along with all other facts and circumstances and decide whether, when so considered, the violator has breached his

common law duty of exercising ordinary care." *Kinney v. Goley,* 4 N.C. App. 325, 332, 167 S.E. 2d 97 (1969).

For errors committed in the trial below, there must be a

New trial.

Judges BROCK and PARKER concur.