LILBURN P. WILLIAMS, Plaintiff,
v.
STEVEN C. BIRD, Defendant.
No. COA08-594.
Court of Appeals of North Carolina.
Filed March 17, 2009.
This case not for publication
Law Office of Jacqueline M. Druar, PLLC, by Jacqueline M. Druar, for Plaintiff-Appellant.
Hartsell & Williams, P.A., by Christy E. Wilhelm, for Defendant-Appellee.
STEPHENS, Judge.
On 7 May 2007, Plaintiff Lilburn P. Williams filed a civil action against Defendant Steven C. Bird alleging negligence and negligence per se as the result of a dog bite Plaintiff received in July 2004 from Defendant's dog.
The case came on for trial during the 29 January 2008 civil session of Rowan County Superior Court. At the close of Plaintiff's evidence, Judge Collier directed a verdict in Defendant's favor and judgment was filed 29 February 2008. From this judgment, Plaintiff appeals.

I. Facts
On 20 July 2004, Plaintiff, an independent flooring contractor for Lowe's Home Improvement, spoke with Allyson Wise, Defendant's girlfriend, to set up an appointment to measure the floors of Defendant's house. On 22 July 2004, Plaintiff went to Defendant's house at 33 East Chamberly Drive, Salisbury, North Carolina. Ms. Wise, who had lived with Defendant for the previous ten years, met Defendant at the house.
Upon his arrival at the house, Plaintiff noticed a dog, an 85-pound German Shepherd, barking and jumping in the window. Ms. Wise put the dog outside before Plaintiff entered the house. While Plaintiff was measuring the floors, he saw the dog outside the glass door barking, growling, and showing his teeth. As Plaintiff was preparing to leave through the front door, he turned and saw the dog running toward him, barking and growling. The dog lunged at Plaintiff, who blocked the dog with his left arm. As the dog was biting and shaking Plaintiff's arm, Ms. Wise pulled the dog away and restrained the dog.
Plaintiff went to Pro-Med, a local emergency medical center, for treatment. Ms. Wise met Plaintiff at Pro-Med and also accompanied Plaintiff to a second doctor's appointment. Ms. Wise paid for both visits.

II. Negligence
Plaintiff first argues that the trial court erred in directing a verdict for Defendant as Plaintiff established a prima facie strict liability case.
To recover for injuries inflicted by a domestic animal, a plaintiff must allege and prove: "(1) that the animal was dangerous, vicious, mischievous, or ferocious, or one termed in law as possessing a vicious propensity; and (2) that the owner or keeper knew or should have known of the animal's vicious propensity, character, and habits." Swain v. Tillett, 269 N.C. 46, 51, 152 S.E.2d 297, 301 (1967) (quotation marks and citations omitted). "The gravamen of the cause of action in this event is not negligence, but rather the wrongful keeping of the animal with knowledge of its viciousness[.]" Ray v. Young, 154 N.C. App. 492, 494, 572 S.E.2d 216, 218 (2002) (quotation marks and citations omitted).
The test of the liability of the owner of the [animal] is . . . not the motive of the [animal] but whether the owner should know from the [animal's] past conduct that he is likely, if not restrained, to do an act from which a reasonable person, in the position of the owner, could foresee that an injury to the person or property of another would be likely to result.
Id. at 494-95, 572 S.E.2d at 219.
In Ray, plaintiff sought compensation for injuries inflicted by defendants' cat, "Charlie." Id. at 492, 572 S.E.2d at 217. Plaintiff alleged that Charlie exhibited vicious propensities, and that defendants were aware of such propensities. At trial, plaintiff presented evidence which tended to establish the following:
After entering [defendants'] residence, plaintiff noticed Charlie behind her, "hissing with his back hunched up." Charlie then growled and bit plaintiff on the back of her left ankle. When plaintiff reached down to assess the damage to her ankle, the cat bit her left hand. Because the cat would not release plaintiff's hand, plaintiff "knocked [Charlie] up against the wall with [her] hand in his mouth," whereupon Charlie initially released his grip, but immediately bit plaintiff in the hand once more. Plaintiff knocked the cat against the wall twice more, and Charlie ended his attack. As a result of this attack, plaintiff suffered considerable injury to her left hand.
. . . Charlie had bitten both defendants on past occasions, as well as a third individual, Mr. J. D. Denson. Plaintiff also testified that Charlie acted aggressively towards defendants' dog and other large dogs. Finally, plaintiff asserted that Charlie suffered from a "compulsive behavioral disorder" for which he had previously been medicated.
Id. at 493, 572 S.E.2d at 218. This Court affirmed the trial court's grant of summary judgment in favor of defendants as
plaintiff failed to establish that Charlie exhibited vicious propensities in the past, or that defendants had any reason to suspect that their cat might attack plaintiff. Although plaintiff presented some evidence tending to show that Charlie had bitten or scratched people in play, plaintiff offered no evidence of any previous behavior by Charlie that would indicate his propensity to attack plaintiff.
Id. at 495, 572 S.E.2d at 219.
In the case at bar, the evidence presented at trial, when taken in the light most favorable to Plaintiff, tended to show the following: Plaintiff testified that when he arrived at Defendant's house, he heard the dog barking and saw the dog "jumping like on the curtains" in the window. Ms. Wise put the dog outside before Plaintiff entered the house. While Plaintiff was measuring the floors, "[t]he dog . . . had his face against the glass, jumping on the glass doors and barking, growling, showing his teeth." When Plaintiff opened the front door to leave, he heard something and turned to see the dog running toward him, "growling, barking, [and] showing his teeth[.]" The dog "jumped right for [Plaintiff's] throat" and Plaintiff blocked the dog with his left arm. The dog "had a hold of" Plaintiff's arm until Ms. Wise put her hand in the dog's mouth and pulled the dog off Plaintiff. The dog tried to jump on Plaintiff a second time and also tried to get through the gate to attack Plaintiff.
Defendant testified that the dog was an 85 or 86-pound German Shepherd who had never bitten before and had never exhibited any aggressive tendencies prior to the incident at issue. Defendant admitted that the dog "[a]lways barks. All dogs bark." He also stated that the dog shows his teeth all the time when he plays with the three cats and one dog that live in Defendant's house. He further stated that the dog aggressively plays with cats and growls at other cats and dogs, but that the dog had not growled at another person. When asked if the dog "ever jumped on any person[,]" Defendant responded, "All dogs jump. We've got another dog, same thing. You walk in the house, he jumps on you." Although the dog had jumped on another person, the dog had never caused injuries to another person.
As in Ray, Plaintiff failed to establish that the dog exhibited vicious propensities in the past, or that Defendant had any reason to suspect that his dog might attack Plaintiff. Plaintiff presented no expert testimony that German Shepherds are an inherently vicious breed of dog and no evidence that this dog had attacked, bitten, growled at, shown his teeth to, or injured any person in the past. Furthermore, while the plaintiff in Ray presented some evidence tending to show that Charlie had bitten or scratched other people, Plaintiff in this case presented no such evidence. As the evidence presented was insufficient to establish that the dog possessed a vicious propensity, or that Defendant knew or should have known that the dog possessed a vicious propensity, the trial court correctly directed a verdict in favor of Defendant on Plaintiff's strict liability claim. Plaintiff's assignment of error is overruled.

III. Negligence per se
Plaintiff further argues that he was entitled to a directed verdict on his claim of negligence per se based on the provisions of Article II of the Rowan County Ordinances.
The violation of a statute or ordinance enacted for the safety and protection of the public constitutes negligence per se. Cowan v. Transfer Co. and Carr v. Transfer Co., 262 N.C. 550, 554, 138 S.E.2d 228, 231 (1964).
The statute [or ordinance] prescribes the standard [of care] . . . . The common law rule of ordinary care does not apply  proof of the breach of the statute is proof of negligence. . . . In short, where a statute or municipal ordinance imposes upon any person a specific duty for the protection or benefit of others, if he neglects to perform that duty, he is liable to those for whose protection or benefit it was imposed for any injuries or damage of the character which the statute or ordinance was designed to prevent, and which was proximately produced by such neglect . . . .
Id. Additionally, the legislature, within its constitutional powers, may deem a defendant strictly liable for injuries on the mere basis of his violation of the statute or ordinance.Hurley v. Miller, 113 N.C. App. 658, 667, 440 S.E.2d 286, 291 (1994) (citation omitted), reversed on other grounds, 339 N.C. 601, 453 S.E.2d 861 (1995).
Rowan County Ordinance Section 5-36, entitled "Restraint of non-vicious animals[,]" provides:
(a) Sufficient restraint shall include, but is not be [sic] limited to, restraint by a leash, harness, or similar effective or humane device that is capable of restraining an animal, or confinement indoors or within a cage, fence, or vehicle or similar secure enclosure. . . . Sufficient restraint shall also include immediate supervision of an animal by a competent person when both are in the limits of the real property of the animal's owner or keeper.
. . . .
(f) An owner or keeper of any animal shall be held strictly liable for any damages done by the animal while on or off the owner's or keeper's real property.
Rowan County, N.C., Code § 5-36 (2007).
Plaintiff argues that Defendant violated subsection (f) of the above ordinance and, thus, "Plaintiff was burdened with proving only that Defendant, within Rowan County, owned the dog and that the dog bit Plaintiff." However, subsection (f) does not prescribe a standard of care, the breach of which would be proof of negligence. Cowan, 262 N.C. at 554, 138 S.E.2d at 231. The portion of the ordinance which "imposes upon [Defendant] a specific duty for the protection or benefit of others[,]" id., is contained in subsection (a). Subsection (f) merely outlines the liability for a violation of the ordinance, deeming the owner of a non-vicious animal[1] strictly liable for any damages caused by a breach of the standard of care set out in subsection (a).[2]
As no evidence was presented to show that Defendant violated any Rowan County Ordinance, and in particular the prescribed standard of care in Section 5-36(a), with regard to his dog, the trial court did not err in directing a verdict in Defendant's favor on the issue of negligence per se. Accordingly, this assignment of error is overruled.

IV. Ms. Wise's Statements
Plaintiff next argues that the trial court erred in prohibiting him from testifying to statements made by Ms. Wise about the dog. Specifically, Plaintiff argues that Ms. Wise's statements were admissible as statements made by Defendant's agent.
Under North Carolina Rule of Evidence 801(d), "[a] statement is admissible as an exception to the hearsay rule if it is offered against a party and it is . . . a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship[.]" N.C. Gen. Stat. § 8C-1, Rule 801(d) (2007). An agent is one who acts for or in place of another by authority of such other.Trust Co. v. Creasy,301 N.C. 44, 56, 269 S.E.2d 117, 124 (1980). "There are two essential ingredients in the principal-agent relationship: (1) [a]uthority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent."Vaughn v. Dept. of Human Resources, 37 N.C. App. 86, 91, 245 S.E.2d 892, 895 (1978), aff'd, 296 N.C. 683, 252 S.E.2d 792 (1979). "[T]he principal must have the right to control both the means and the details of the process by which the agent is to accomplish his task in order for an agency relationship to exist." Wyatt v. Walt Disney World Co., 151 N.C. App. 158, 166, 565 S.E.2d 705, 710 (2002) (quotation marks and citation omitted).
Here, Plaintiff offered no evidence whatsoever of any agency relationship between Ms. Wise and Defendant. Accordingly, we summarily reject Plaintiff's contention, FCX, Inc. v. Caudill, 85 N.C. App. 272, 280, 354 S.E.2d 767, 773 (1987), and conclude that the trial court correctly prohibited Plaintiff from testifying to Ms. Wise's statements.[3]

V. Plaintiff's medical records
Plaintiff finally argues that the trial court erred in excluding his medical records from evidence on the basis of hearsay.
On appeal, the standard of review of a trial court's decision to admit or exclude evidence is abuse of discretion. Williams v. Bell, 167 N.C. App. 674, 678, 606 S.E.2d 436, 439, disc. review denied, 359 N.C. 414, 613 S.E.2d 26 (2005). An abuse of discretion will be found only when the trial court's decision "was so arbitrary that it could not have been the result of a reasoned decision." Id. at 678, 606 S.E.2d at 439 (quotation marks and citation omitted).
"Hearsay evidence consists of the offering into evidence of a statement, oral or written, made by a person other than the witness for the purpose of establishing the truth of the matter so stated." Wilson v. Hartford Acc. and Indem. Co., 272 N.C. 183, 188, 158 S.E.2d 1, 5 (1967). See N.C. Gen. Stat. § 8C-1, Rule 801(c) (2007). Hearsay evidence is inadmissible at trial unless an exception to the hearsay rule applies. N.C. Gen. Stat. § 8C-1, Rule 802 (2007). A medical record falls within the business records exception to the hearsay rule, see N.C. Gen. Stat. § 8C-1, Rule 803(6) (2007), and may be admitted if a proper foundation is laid. State v. Deanes, 323 N.C. 508, 526-27, 374 S.E.2d 249, 261 (1988), cert. denied, 490 U.S. 1101, 104 L. Ed. 2d 1009 (1989).
A proper foundation consists of testimony from a hospital librarian or custodian of the records or other qualified witnesses to the identity and authenticity of the record and the mode of its preparation. In addition, it must be shown that the entries were made at or near the time of the event, made by persons having knowledge of the data set forth, and made ante litem motam.

In re Parker, 90 N.C. App. 423, 431, 368 S.E.2d 879, 884 (1988) (quotation marks and citation omitted). In lieu of a personal appearance in court to testify to such matters, the custodian of the record may tender to the court in which the action is pending by registered or certified mail or by personal delivery, on or before the time specified in the subpoena, certified copies of the records requested together with a copy of the subpoena and an affidavit by the custodian testifying that the copies are true and correct copies and that the records were made and kept in the regular course of business, or if no such records are in the custodian's custody, an affidavit to that effect. . . .
N.C. Gen. Stat. § 1A-1, Rule 45(c)(2) (2007).
Although the records are admissible if a proper foundation is laid, "[t]he court should exclude from jury consideration matters in the record which are immaterial and irrelevant to the inquiry, and entries which amount to hearsay on hearsay." State v. Wood, 306 N.C. 510, 515, 294 S.E.2d 310, 313 (1982) (quotation marks and citation omitted).
In State v. Woods, 126 N.C. App. 581, 486 S.E.2d 255 (1997), defendant argued that the trial court erred in admitting into evidence hospital records of two victims as "the State was required to present these records through the in-court testimony of a medical expert witness to establish admissibility under N.C. R. Evid. 803(6), the business records exception to the hearsay rule." Id. at 589, 486 S.E.2d at 260. The State offered the challenged medical records into evidence by presenting written affidavits/certifications from the custodian of the records. Defendant did not argue that the custodian of the records had to be present to testify at trial but instead contended that the State was required to introduce these records through a medical expert's testimony. In overruling Defendant's argument and concluding that the trial court properly admitted the records, this Court explained:
Defendant's contention is an attempt to obtain what N.C. R. Evid. 803(6), upon proper foundation, expressly refuses to require  the in-court testimony of the persons who made the business records (the hearsay declarants), being the medical personnel who examined [the victims]. However, under Rule 803(6), once the proper foundation for admission is established "by the testimony of the custodian or other qualified witness," the record is admissible regardless of the fact that it is hearsay. N.C. R. Evid. 803(6) explicitly permits use of a record custodian's testimony to establish a foundation for admission of the records; it does not require that this foundation be established by a "medical expert" as sought by defendant.
Id. at 590, 486 S.E.2d at 260.
In this case, Plaintiff offered the challenged medical records into evidence by presenting written affidavits/certifications from the custodian of the records. In his brief, Defendant does not contend the custodian should have been present to testify at trial nor did Defendant object at trial to the fact that the custodian was not present to testify in person. "Thus, we need not address whether the affidavits/certifications were sufficient under N.C. R. Evid. 803(6), in lieu of the custodian's in-court testimony, because [D]efendant has not argued this issue on appeal and did not preserve it by objection at trial." Id. at 589-90, 486 S.E.2d at 260.
Defendant instead objected to the admission of the records on the basis of hearsay. The trial court sustained Defendant's objection, stating that the purpose of Rule 45(c) "is to avoid having both the doctor here and the records custodian. [The records] don't just come in without such a witness. . . . [Y]ou still have to have a nurse or a doctor come in to interpret those records and testify from those records." We disagree.
As in Woods, "Defendant's contention is an attempt to obtain what N.C. R. Evid. 803(6), upon proper foundation, expressly refuses to require  the in-court testimony of the persons who made the business records (the hearsay declarants) . . . ." Id. As in Woods, the foundation for admission of Plaintiff's medical records was established through written affidavits/certifications from the custodian of the records, which were unchallenged by Defendant, and the records were admissible regardless of the fact that they contained hearsay. As N.C. R. Evid. 803(6) explicitly permits use of a record custodian's testimony to establish a foundation for admission of the records, and does not require that this foundation be established by a "nurse or a doctor" as stated by the trial court, we conclude the trial court erred in excluding those portions of Plaintiff's medical records which were not irrelevant, immaterial, or hearsay upon hearsay.
Regardless of the trial court's error, however, Plaintiff personally testified to the nature and extent of his injury, the treatment he received as a result of the injury, and the recovery time associated with the injury. As Plaintiff testified to the information he sought to introduce with the medical records, the trial court's error in excluding the records was harmless. See Bowden v. Bell, 116 N.C. App. 64, 69, 446 S.E.2d 816, 820 (1994)(assuming arguendo it was error to exclude the evidence, such error was not prejudicial as there was other evidence stating the same proposition). Accordingly, Plaintiff's assignment of error is overruled.
The judgment of the trial court is
AFFIRMED.
Chief Judge MARTIN and Judge WYNN concur.
Report per Rule 30(e).
NOTES
[1] A dangerous/potentially dangerous dog is defined in Rowan County Ordinance Section 5-39. Plaintiff makes no allegation that the dog was dangerous or potentially dangerous pursuant to that ordinance.
[2] Subsections (b) through (e) outline additional restraint requirements, none of which are applicable in this case.
[3] We note that although Ms. Wise was in the courtroom during the proceeding and available to be called as a witness, Plaintiff chose not to do so.