MURPHY, Judge.
 

 *104
 

 *183
 
 Plaintiff, Terry Parker ("Parker"), challenges the trial court's order granting summary judgment to Defendant, Barbara Colson Myers ("Myers"), on Parker's negligence
 
 per se
 
 claim based upon three municipal ordinances and negligence claim based on a theory of premises liability. We hold the trial court erred in granting Myers's motion for summary judgment on Parker's negligence
 
 per se
 
 claim based on Wadesboro Ordinance § 4-4, but affirm the trial court's order granting Myers's motion for summary judgment on the negligence
 
 per se
 
 claim based on Wadesboro Ordinances §§ 4-7 and 4-31. Additionally, we affirm the trial court's order granting Myers's motion for summary judgment on Parker's negligence claim based on a theory of premises liability.
 

 BACKGROUND
 

 Myers is the sole owner of a residential home and the parcel of land upon which it sits at 914 Dora Street in Wadesboro. Immediately adjacent to Myers's parcel of land is a parcel owned by Myers's sister, Vickie Colson ("Vickie"). On Vickie's property at 916 Dora Street sits a little stone house that was uninhabitable and boarded up, with no running water or electricity. There is no fence separating the two parcels. Neither property is the primary residence of either sister. Myers's
 
 *184
 
 primary residence is in Texas, and Vickie's primary residence is in South Carolina. However, at all relevant times, the two sisters and their brother, Henry Colson ("Henry"), all had keys and full access to Myers's home and both parcels of land.
 

 Henry resided in Charlotte and ran a pitbull breeding "business." Henry's girlfriend told him that he could not continue to board his two pitbulls at her residence due to insurance concerns. Henry told his sisters that he would be moving the two dogs to Wadesboro and selling any puppies born on the property. An enclosure was built to board the two dogs on Vickie's property. Myers's home was used to store the food for the dogs, and, since Vickie's property had no running water or electricity, it was also used to provide water and electricity to care for the dogs. In 2013, none of the siblings resided primarily in Wadesboro, despite the dogs being boarded there. Henry would drive from Charlotte only twice a week to feed the dogs; however, when Myers occasionally visited Wadesboro, she would provide the food and water for the dogs.
 

 During one of Myers's visits to her home in Wadesboro, Myers let the two dogs out of their enclosure to roam free in the yard. While the dogs were out of the enclosure, Parker's brother, Tommy Parker ("Tommy"), was walking along Dora Street. Myers yelled at Tommy not to come into the yard because the dogs were roaming free. Hearing Myers yell, the two dogs "just took off." The dogs chased Tommy and "jumped on him," causing a wound that drew blood.
 

 Approximately one month later on 30 August 2013, the date in question, the dogs were let out of the enclosure by Henry and were drinking water from the faucet located on Myers's property. At this time, Parker was walking down the street where the properties were located. While walking, Parker observed the two dogs run from Myers's property towards him. The dogs attacked, leaving Parker hospitalized for 13 days with severe and permanent injuries to his legs.
 

 Parker subsequently brought a personal injury action against Henry, Vickie, and Myers in Anson County Superior Court, the procedural history of which we outlined in
 
 Parker v. Colson
 
 , --- N.C. App. ----,
 
 795 S.E.2d 654
 
 ,
 
 2017 WL 490487
 
 (2017) (unpublished):
 

 In his complaint, [Parker] asserted claims grounded in strict liability and negligence
 
 per se
 
 . [Myers] subsequently filed a motion to dismiss [Parker's] claims against her pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. On 14 October 2015, the trial court granted [Myers's] motion as to [Parker's] claim based on strict
 
 *185
 
 liability but denied the motion as to the claim based on negligence
 
 per se
 
 .
 

 On or about 21 January 2016, [Myers] filed a motion for summary judgment as to the remaining claims against her. [Parker] subsequently filed a cross-motion for partial summary judgment against all of the
 
 *105
 
 defendants on the issue of negligence
 
 per se
 
 . A hearing was held before the Honorable Mary Ann Tally on 28 March 2016 in connection with the pending motions. On 31 March 2016, the trial court issued an order (1) granting [Parker's] motion for summary judgment on the issue of negligence
 
 per se
 
 as to Henry and Vickie; and (2) granting [Myers's] motion for summary judgment, thereby dismissing all remaining claims against her.
 

 Id.
 
 at *1. Parker now appeals the trial court's order granting Myers's motion for summary judgment.
 

 ANALYSIS
 

 A. Standard of Review
 

 Our standard of review for an order granting summary judgment is well established:
 

 [We] review[ ] a trial court's entry of summary judgment de novo. Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party. The moving party has the burden to show the lack of a triable issue of fact and to show that he is entitled to judgment as a matter of law.
 

 Ron Medlin Constr. v. Harris
 
 ,
 
 364 N.C. 577
 
 , 580,
 
 704 S.E.2d 486
 
 , 488 (2010) (citations and internal quotation marks omitted). Through this filter, we examine the forecast of evidence and the claims asserted by Parker.
 

 B. Negligence
 
 Per Se
 

 Parker contends the trial court erred in granting Myers's motion for summary judgment on his claims for negligence
 
 per se
 
 for violations of
 
 *186
 
 §§ 4-4, 4-7, and 4-31 of Wadesboro Code of Ordinances. We discuss each in turn.
 

 "A public safety statute [or ordinance] is one imposing upon the defendant a specific duty for the protection of others."
 
 Stein v. Asheville City Bd. of Educ.
 
 ,
 
 360 N.C. 321
 
 , 326,
 
 626 S.E.2d 263
 
 , 266 (2006) (citation, alteration, and internal quotation marks omitted). A violation of a public safety statute or ordinance constitutes negligence
 
 per se
 
 , unless the statute or ordinance indicates otherwise.
 

 Id.
 

 Accordingly, "[a] member of the class intended to be protected by a statute or regulation who suffers harm proximately caused by its violation has a claim against the violator."
 
 Baldwin v. GTE South, Inc.
 
 ,
 
 335 N.C. 544
 
 , 546,
 
 439 S.E.2d 108
 
 , 109 (1994). Under such a claim, "[t]he statute prescribes the standard, and the standard fixed by the statute is absolute. The common law rule of ordinary care does not apply - proof of the breach of the statute is proof of negligence."
 
 Carr v. Murrows Transfer, Inc.
 
 ,
 
 262 N.C. 550
 
 , 554,
 
 138 S.E.2d 228
 
 , 231 (1964). "But causal connection between the violation and the injury or damage sustained must be shown; that is to say, proximate cause must be established."
 

 Id.
 

 The rules and canons of construction and interpretation of statutes apply equally to municipal ordinances.
 
 Woodhouse v. Bd. of Comm'rs of Town of Nags Head
 
 ,
 
 299 N.C. 211
 
 , 225,
 
 261 S.E.2d 882
 
 , 891 (1980).
 

 1. Wadesboro Ordinance § 4-4
 

 Wadesboro Ordinance § 4-4 states:
 

 It shall be unlawful for any person within the town to keep or cause to be kept any vicious animal unless such vicious animal is confined within a secure building or enclosure, or under restraint.
 

 A "vicious animal" is defined in Wadesboro Ordinance § 4-1 as "any animal that has made an attack on a human being by biting or in any manner causing abrasions or cuts of the skin or one which without provocation attacks other pets." "Under restraint" is defined under Wadesboro Ordinance § 4-1 as follows:
 

 Restraint
 
 . An animal is under restraint if:
 

 (1) It is controlled by means of a chain, leash or other like device;
 

 (2) It is at a heel position with the custodian and is obedient to his [or her] commands;
 

 *106
 

 *187
 
 (3) It is in the immediate vicinity of and visible to the custodian and is under his direct voice control and obedient to his command;
 

 (4) It is on or within a vehicle being driven or parked; or
 

 (5) It is within a secure enclosure.
 

 Parker contends there were genuine issues of material fact in that (1) § 4-4 was a public safety ordinance imposing a special duty upon Myers for the protection of others, (2) Parker was a member of the class intended to be protected by the ordinance, and (3) he sustained injuries that were proximately caused by Myers's breach of the ordinance. We agree.
 

 In determining whether an ordinance is a public safety ordinance, we look to whether it is "designed for the protection of life or limb" and "imposes a duty upon members of society to uphold that protection."
 
 State v. Powell
 
 ,
 
 336 N.C. 762
 
 , 768-69,
 
 446 S.E.2d 26
 
 , 29 (1994). This determination is a question of law. In
 
 Powell
 
 , a municipal ordinance provided that "no dog shall be left unattended outdoors unless it is restrained and restricted to the owner's property by a tether, rope, chain, fence or other device."
 
 Id.
 
 at 769,
 
 446 S.E.2d at 30
 
 . Our Supreme Court held that the ordinance served the dual purpose of protecting persons as well as property, stating, "the life and limb of pedestrians, joggers, and the public at large are protected by this ordinance ... by confining the dogs to the owner's property while providing, in some cases, an adequate fence to keep animals and children from accessing the lot and being exposed to the dogs."
 

 Id.
 

 Here, Ordinance § 4-4 is designed for similar purposes. By making it unlawful for a person to keep or cause to be kept a vicious animal unless confined or under restraint as designated, the ordinance protects the public and passersby from any danger posed by vicious animals. Moreover, it imposes a special duty to confine or restrain a vicious animal that they keep or cause to be kept. For these reasons, § 4-4 is a safety ordinance that imposes a special duty upon persons who keep animals within the town.
 

 Next, we consider whether Parker was a member of the class intended to be protected by the ordinance. The evidence forecasted at summary judgment showed that Parker was walking along Dora Street in Wadesboro when the two dogs ran towards and attacked him, causing severe injuries. Parker was a pedestrian and member of the general public, so he is within the intended protected class.
 

 Having determined that § 4-4 is a public safety ordinance and that Parker was a member of the group intended to be protected by the
 
 *188
 
 ordinance, we must next determine whether there was a genuine issue of fact as to Myers's violation of the ordinance that proximately caused Parker's injuries.
 

 Myers does not contest that the two dogs were not confined or under restraint within the meaning of Ordinances §§ 4-1 and 4-4 and were vicious animals under Ordinance § 4-1. Rather, she argues that she could not violate the statute, as she was not "an 'owner' or 'keeper' of the dogs ... and therefore could not 'keep or cause to be kept' the dogs in question." Myers's argument fails to consider the plain language of the ordinance. There is no language in § 4-4 to indicate that the ordinance only applies to owners of a vicious animal. Moreover, the ordinance does not limit liability to only "keepers" - it expressly states "it shall be unlawful for any person ... to keep
 
 or cause to be kept
 
 any vicious animal unless ...." The ordinance applies not only to those persons who keep a vicious animal themselves, but also persons who cause the vicious animal to be kept. To accept Myers's argument that the statute only applies to owners or keepers would be to render the phrase "cause to be kept" redundant and surplusage.
 
 See
 

 Hall v. Simmons
 
 ,
 
 329 N.C. 779
 
 , 784,
 
 407 S.E.2d 816
 
 , 818 (1991) ("The rules of statutory construction require presumptions that the legislature inserted every part of a provision for a purpose and that no part is redundant.").
 

 Taking the evidence in the light most favorable to Parker, there is a genuine issue of fact as to whether Myers caused the two dogs to be kept. Henry stated that the food for the dogs was stored in Myers's house and that the water for the dogs to drink and the
 
 *107
 
 electricity to cool the dogs during the hot summer months came from Myers's home with both her knowledge and acquiescence. The food storage, water, and electricity were critical to the keeping of the dogs, as Vickie's home on the property where the dogs were housed was boarded up, with no running water or electricity. Indeed, when Henry was asked whether he could have kept the dogs in their kennel at this location without the use of Myers's home for food storage, water, and electricity, he stated, "No. I couldn't." Additionally, when Myers visited Wadesboro, she would feed and care for the dogs herself so that Henry did not have to drive from Charlotte to Wadesboro. This forecasted evidence, taken in the light most favorable to Parker, shows that Myers's role in keeping the dogs went beyond mere knowledge of their keeping and raises a genuine issue of whether Myers caused the dogs to be kept under the language of Ordinance § 4-4. Because there was a genuine issue of fact as to whether Myers violated Ordinance § 4-4 when she caused to be kept a vicious animal that was not confined within a secure building or enclosure or under
 
 *189
 
 restraint, and whether this violation proximately caused the injuries inflicted upon Parker, the trial court erred in granting Myers's motion for summary judgment on Parker's negligence
 
 per se
 
 claim based on Ordinance § 4-4.
 

 2. Wadesboro Ordinance § 4-7
 

 Wadesboro Ordinance § 4-7 states:
 

 It shall be unlawful for any person within the town to cause, permit, or allow a dog to be away from the premises of the owner, or to be in a public place, or on any public property in the town, unless such dog is under restraint.
 

 For the same reasons that we concluded that § 4-4 is a public safety ordinance and that Parker was a member of the class intended to be protected by the ordinance, we conclude the same of § 4-7. This ordinance, requiring any dog to be restrained when away from the premises of the owner, in a public place, or public property in the town parallels the ordinance in
 
 Powell
 
 that our Supreme Court concluded "protects people generally by confining the dogs to the owner's property while providing, in some cases, an adequate fence to keep animals and children from accessing the lot and being exposed to the dogs."
 
 Powell
 
 ,
 
 336 N.C. at 769
 
 ,
 
 446 S.E.2d at 30
 
 . Parker, as a passerby, was a member of the class of "pedestrians, joggers, and the public at large [to be] protected by this ordinance ...."
 

 Id.
 

 Parker, however, fails to forecast evidence that raises a genuine issue of material fact as to whether Myers violated this ordinance. There is a violation of § 4-7 where an individual causes, permits, or allows a dog to be away from the owner's premises or in any of the listed premises unless under restraint. Therefore, based on the plain language of the ordinance, it must be the act or failure to act by the alleged individual that leads to the dog being away from an owner's premises or in a public place or public property while unrestrained. Here, even taking the evidence in the light most favorable to Parker, there was no such act or omission by Myers that caused, permitted, or allowed the two dogs to be away from Vickie's property on the day in question. Henry was the only individual on the premises that day, and he was the only individual who caused, permitted, or allowed the two dogs to be away from their enclosure and Vickie's property without restraint.
 

 The trial court did not err in granting summary judgment in Myers's favor on Parker's negligence
 
 per se
 
 claim based upon Ordinance § 4-7.
 

 *190
 

 3. Wadesboro Ordinance § 4-31
 

 Wadesboro Ordinance § 4-31 states:
 

 The custodian of every animal shall be responsible for the care, licensing, vaccination and behavior of such animal.
 

 Custodian is defined under the Municipal Code as "the person owning, keeping, having charge of, sheltering, feeding, harboring, or taking care of any animal, or is otherwise the keeper of an animal. A custodian is not necessarily the owner."
 

 We need not determine whether there was a genuine issue as to whether Myers was a custodian within the meaning of the ordinance, as Ordinance § 4-31 cannot serve as a predicate ordinance upon which a
 
 *108
 
 claim of negligence
 
 per se
 
 is based. To establish a negligence
 
 per se
 
 claim, the ordinance must impose
 
 a specific duty
 
 upon a defendant for the protection of others.
 
 Stein
 
 ,
 
 360 N.C. at 326
 
 ,
 
 626 S.E.2d at 266
 
 . However, § 4-31 imposes no duty of care on any alleged custodian. Rather, it merely makes a statement of liability without respect to a standard of care to which an individual must abide. Without a standard of care set by the ordinance, there can be no breach of the ordinance to constitute negligence
 
 per se
 
 .
 
 See
 

 Carr
 
 ,
 
 262 N.C. at 554
 
 ,
 
 138 S.E.2d at 231
 
 ("The distinction, between a violation of a statute or ordinance which is negligence
 
 per se
 
 and a violation which is not, is one of duty. In the former the duty is to obey the statute, in the latter the duty is due care under the circumstances."). There was no evidence presented that Myers breached this ordinance, and summary judgment based upon this claim was appropriately granted.
 

 C. Premises Liability
 

 Parker also contends the trial court erred in granting Myers's motion for summary judgment on his common law negligence claim. We disagree.
 

 Parker argues that "[c]ommon law has recognized in dog bite cases a negligence claim under the theory of premises liability against a non-owner of the dogs" and cites
 
 Holcomb v. Colonial Assoc.
 
 ,
 
 L.L.C.
 
 ,
 
 358 N.C. 501
 
 , 507,
 
 597 S.E.2d 710
 
 , 714 (2004), for this proposition. While Parker is correct that a common law negligence claim may be brought against a non-owner of a dog who injures a plaintiff, he erroneously asserts this doctrine's applicability in the case before us.
 

 In
 
 Holcomb
 
 , our Supreme Court addressed "the issue of whether a landlord can be held liable for negligence when his tenant's dogs injure
 
 *191
 
 a third party."
 
 Holcomb
 
 ,
 
 358 N.C. at 503
 
 ,
 
 597 S.E.2d at 712
 
 . In
 
 Holcomb
 
 , defendant Olson resided as a tenant in a home situated on thirteen acres owned by defendant Colonial; Management Associates managed the property for Colonial.
 

 Id.
 

 The plaintiff was a demolition contractor who visited the rental homes on the property to provide Colonial with an estimate for demolition.
 
 Id.
 
 at 504,
 
 597 S.E.2d at 713
 
 . One of Olson's two dogs, which Management permitted Olson to keep, lunged at the plaintiff, causing him injuries.
 

 Id.
 

 Our Supreme Court first noted that "[t]he fact that we recognize a strict liability cause of action against owners and keepers of vicious animals ... does not preclude a party from alleging negligence (a different cause of action) against a party who may or may not be an owner or keeper of an animal."
 
 Id.
 
 at 507,
 
 597 S.E.2d at 714
 
 (2004). "Under a premises liability theory, the
 
 Holcomb
 
 Court [then] held that the landlord could be held liable because the 'lease provision granted [landlord] sufficient control
 
 to remove the danger
 
 posed by [tenant]'s dogs.' "
 
 Stephens v. Covington
 
 ,
 
 232 N.C. App. 497
 
 , 499,
 
 754 S.E.2d 253
 
 , 255 (2014) (citing
 
 Holcomb
 
 ,
 
 358 N.C. at 508-09
 
 ,
 
 597 S.E.2d at
 
 715 ). Thus,
 
 Holcomb
 
 and the cases following it make clear that the crux of imposing liability on a landowner for injuries inflicted on a third person by a dog attack under a theory of premises liability is whether the landlord had "sufficient control to remove the danger posed by [the tenant's] dog."
 
 Holcomb
 
 ,
 
 358 N.C. at 508-09
 
 ,
 
 597 S.E.2d at
 
 715 ;
 
 Stephens
 
 ,
 
 232 N.C. App. at 500
 
 ,
 
 754 S.E.2d at 255
 
 ("[I]t was still clear from [
 
 Holcomb
 
 ] that it was not merely the landlord's control of the property, but particularly the landlord's sufficient control to remove the danger posed which resulted in the landlord's liability." (citation and internal quotation marks omitted)).
 

 Even taken in the light most favorable to Parker, there is no evidence Myers exercised sufficient control to remove the danger posed by Henry's dogs. Vickie owned the property where the dogs' enclosure was located, meaning Myers exercised no control over the manner in which the dogs were housed or enclosed. Moreover, Myers exercised no control over the manner in which the dogs were released from that enclosure or whether they were under restraint when released by Henry. Significantly, the attack did not occur on the property owned by Myers. Such circumstances are fundamentally different from those cases cited by
 
 Holcomb
 
 where a landlord had the power to control the harboring
 
 *109
 
 of a dog on the landlord's property.
 
 [1]
 
 Without a forecast of evidence that
 
 *192
 
 Myers exercised sufficient control to remove the danger posed by the two dogs, Parker's negligence claim based upon a theory of premises liability fails. The trial court did not err in granting Myers's summary judgment on this theory of liability.
 

 CONCLUSION
 

 With respect to Parker's negligence
 
 per se
 
 claim based on Ordinance § 4-4, Myers failed to show that there was no genuine issue of material fact and that she is entitled to judgment as a matter of law. The trial court erred in granting Myers's motion for summary judgment on this claim. The forecasted evidence, however, failed to raise a genuine issue as to whether Myers violated Ordinance § 4-7, and Ordinance § 4-31 fails to establish a standard of care upon which a claim of negligence
 
 per se
 
 can be based. The trial court did not err in granting Myers's motion for summary judgment on Parker's negligence
 
 per se
 
 claim based on these two ordinances. The trial court also did not err in granting Myers's motion for summary judgment on Parker's negligence claim. We reverse in part and remand and affirm in part.
 

 REVERSED IN PART AND REMANDED; AFFIRMED IN PART.
 

 Judges STROUD and ZACHARY concur.
 

 [1]
 

 See
 

 Batra v. Clark,
 

 110 S.W.3d 126
 
 , 129-30 (Tex.App.-Houston 1st Dist. 2003)
 
 ; see also
 

 Uccello v. Laudenslayer,
 

 44 Cal.App.3d 504
 
 , 514,
 
 118 Cal.Rptr. 741
 
 , 747 (1975) (holding the landowner had control via the power "to order his tenant to cease harboring the dog under pain of having the tenancy terminated");
 
 Shields v. Wagman,
 

 350 Md. 666
 
 , 684,
 
 714 A.2d 881
 
 , 889-90 (1998) (holding the landowner could exercise control over his tenant's dog by refusing to renew a month-to-month lease agreement);
 
 McCullough v. Bozarth,
 

 232 Neb. 714
 
 , 724-25,
 
 442 N.W.2d 201
 
 , 208 (1989) (holding liability may be imposed on a landlord where, "by the terms of the lease, [the landlord] had the power to control the harboring of a dog by the tenant and neglected to exercise that power").